**NECKER, Ashley, a Minor by Tammy NECKER, her Parent and Next Friend, Appellants,**

v.

**CITY OF BRIDGETON, Respondent.**

No. 70263.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 11, 1997.

John J. Schlueter, Todd A. Baker, Davidson, Schlueter, Mandel & Mandel, St. Louis, for Appellants.

Peter J. Dunne, William S. Thomas, Rabbitt, Pitzer & Snodgrass, St. Louis, for Respondent.

SIMON, Judge.

Tammy Necker (mother), on behalf of her daughter, Ashley Necker (daughter), appeals from a summary judgment granted in favor of the City of Bridgeton (City), a municipality organized and existing under the laws of the State of Missouri.

In mother's point on appeal, she contends that the trial court erred in finding that (1) there was no issue of material fact concerning daughter's alleged misuse of City's property and (2) daughter's use or actions on the balance beam properly defeated mother's claim on the basis of sovereign immunity under § 537.600 RSMo 1994 (all references hereinafter shall be to RSMo 1994 unless otherwise noted).

It is well settled that when considering an appeal from summary judgment, we review the record in a light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376[1–3] (Mo. banc 1993). Our review is essentially *de novo. Id.*[4–6]. The criteria on appeal for testing

the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 387[9].

A defending party may establish a right to judgment by showing: (1) the facts that negate any one of the claimant's element facts; (2) that the non-movant has not been able to produce, and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defense. *ITT*, 854 S.W.2d at 381[16].

The non-movant must show—by affidavit, deposition, answers to interrogatories, or admission on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. *ITT*, 854 S.W.2d at 381[17]. Where, as here, the trial court grants summary judgment without specifying the basis upon which it was granted, we will uphold the summary judgment if it is appropriate on any theory. *Southwestern Bell Yellow Pages v. Robbins*, 865 S.W.2d 361, 369[14] (Mo.App. E.D.1993).

The facts, as established by the record on appeal, are essentially undisputed and indicate that on March 22, 1994, Neckers were at the Bridgeton Community Center because mother was participating in a women's volleyball league, which she had participated in for approximately eleven years. City did not provide any baby sitting, daycare, or supervision services for the children of the women in the volleyball league. It was City's posted policy that children under the age of twelve were not allowed in the community center after 6:00 pm unless accompanied by a parent. Daughter was nine at the time.

Mother's games were scheduled to begin at 6:30 pm that evening. During the first of mother's games, she noticed that daughter had moved from the bleachers, where she had been sitting, to the hall that leads from the gym to the snack area. A balance beam was against the wall in that hallway. The top of the beam's surface was approximately twelve inches from the floor and was four inches in width. The balance beam was supported by "T-shaped" tubing at each end for stability with round rubber cushions on the bottom.

Subsequently, daughter began playing on the beam and while walking across it she did a jump, switching her feet in mid-air. When trying to land on the beam one of her feet slipped, causing her to fall sideways off the beam and injure her arm.

In her petition, mother alleged that City is a municipality organized under the laws of the State of Missouri and that it: 1) failed to place signs and/or warnings; 2) failed to store and secure the balance beam; 3) allowed the balance beam to be used in the gym and that the beam was unstable, lacked necessary screws and bolts which created a danger; 4) failed to provide supervision and 5) created a dangerous condition upon its premises by exposing a dangerous instrumentality in an area where children play. City in its answer denied the allegations as to negligence and pleaded as affirmative defenses, failure to state a claim, comparative fault of mother and daughter and sovereign immunity.

In its motion for summary judgment, City contended it was entitled to a judgment as a matter of law because the uncontroverted facts demonstrated that daughter's injuries were the result of her own misuse of the beam, mother did not supervise daughter's activities and City had no obligation or ability to supervise daughter. In addition, the motion raised the affirmative defense that the action was barred by sovereign immunity.

In support of its motion for summary judgment, City presented deposition testimony of mother, daughter, and Mr. Campbell, the community center's supervisor, and a memorandum. Although the record does not include the entire deposition of each person, it contains certain portions and statements referencing other portions.

Through the deposition testimony, City established that it had a written, posted policy concerning children in the community center after 6:00 pm. City also established that mother brought daughter to her volleyball game at 6:30 pm and that while she was playing the first game, daughter left the bleachers, entered the hallway, climbed upon the balance beam, slipped and fell when she tried to perform a jump on the beam. Further, in mother's deposition, she stated that daughter said that the beam was not unsteady and that there were no defects or problems with the beam or the cover of the beam which caused daughter to fall.

Additionally, Mr. Campbell stated that City had no expectation that kids may decide to play on the beam and that the beam was steady upon inspection after the incident. Finally, in its memorandum in support of summary judgment, City extensively argued that as a municipality, mother's claims are barred by sovereign immunity.

Mother's response to City's motion was in narrative form and did not admit or deny any of City's allegations in numbered paragraphs. Thus, it failed to comply with Rule 74.04(c)(2); *Snelling v. Bleckman*, 891 S.W.2d 572, 573[1] (Mo.App. E.D.1995).

She did not deny City's allegations that she failed to properly supervise the activities of daughter and, most significantly, she did not refute that the beam was steady and had no defects which caused daughter to fall. Since City's allegations are not denied, they are admitted. *Kennedy v. Fournie*, 898 S.W.2d 672, 678[4] (Mo.App. E.D.1995).

Further, she alleged that daughter's decision to play on the beam was a reasonable, expected situation for which City is negligent. She relies on statements from Mr. Campbell's deposition stating that the beam was left in a hallway when not in use, that children had open access to the beam, that beams are normally used with safety mats and an instructor, and that no warning signs, barricades or safety mats were around the beam in the hallway. Additionally, mother, relying on *Alexander v. State*, 756 S.W.2d 539 (Mo. banc 1988) and distinguishing *Stevenson v. City of St. Louis School Dist.*, 820 S.W.2d 609 (Mo.App.1991), contended that the present case fell within the "dangerous condition" exception to sovereign immunity because the misplacement of the beam and City's failure to make it safe were defects of City's property under the sovereign immunity statute. The trial court granted City's motion for summary judgment.

In her point on appeal, mother contends that the trial court erred in finding that (1) there was no issue of material fact concerning daughter's alleged misuse of City's property and (2) daughter's use or actions on the balance beam properly defeated mother's claim on the basis of sovereign immunity under § 537.600. We take her contentions out of order.

■ Under § 537.600.1, a public entity is afforded sovereign immunity from tort actions. *Trumbo v. Metropolitan St. Louis Sewer Dist.*, 877 S.W.2d 198, 201 (Mo.App. E.D.1994). A municipal corporation is a "public entity" within the meaning of § 537.600. *State ex rel. City of Marston v. Mann*, 921 S.W.2d 100, 102[3] (Mo.App. S.D. 1996). However, under § 537.600.1(2), sovereign immunity is waived for injuries cause by the dangerous condition of a public entity's property. *Trumbo*, 877 S.W.2d at 201.

■ Thus, to state a claim against City under the "dangerous condition" exception to sovereign immunity, mother must establish: (1) a dangerous condition of the property; (2) that the injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind which was incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition. *Trumbo*, 877 S.W.2d at 201; § 537.600.1(2). The statutory provisions which waive a public entity's sovereign immunity must be strictly construed. *State v. Godfrey*, 883 S.W.2d 550, 552[7] (Mo.App. E.D.1994).

■ In mother's petition, she did not allege specific facts which demonstrated a dangerous condition other than that the "balance beam was unstable, and lacked necessary screw[s] and bolts." However, mother pro-

duced no evidence to support her allegations. The remainder of mother's petition made nothing but broad conclusory statements about City's purported negligence. In her narrative response to City's motion for summary judgment, she alleged that the failure to make the beam safe, by warnings and/or signs, barricades, mats, or supervision, and misplacing the beam in the hall, created a dangerous condition.

■ For property to be dangerous, there must be some defect, physical in nature. *Alexander*, 756 S.W.2d at 542. Intangible acts such as inadequate supervision, the lack of warnings and/or signs, the inability to secure an area and the lack of barricades do not create a dangerous condition. *See Godfrey*, 883 S.W.2d at 552[4–9] (citing *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985)); *Tillison v. Boyer*, 939 S.W.2d 471, 473 (Mo.App.E.D.1996) (citing *Alexander*, 756 S.W.2d at 542); *Hedayati v. Helton*, 860 S.W.2d 795, 796 (Mo.App.1993); *Stevenson*, 820 S.W.2d at 613. Remaining then, is mother's contention that the placement of the beam in the hall created a dangerous condition.

In her narrative response to City's motion for summary judgment, mother, relying on *Alexander* asserts that "it is well settled case law that the misplacement of personal property is sufficient to meet the 'dangerous condition' exception of the sovereign immunity defense."

Additional analysis of *Alexander* is needed. In *Alexander*, the plaintiff injured his back when he stepped off a ladder and onto a folding room partition that had been placed at the foot of the ladder. In finding the partition constituted a dangerous condition, our Supreme Court noted that the placement of the partition against the ladder created a physical deficiency in the state's property which in turn created a dangerous condition. *Alexander*, 756 S.W.2d at 542.

In its holding, our Supreme Court declared that the test for a dangerous condition was that the condition was dangerous because its existence, without intervention by third parties, posed a physical threat to plaintiff. *Alexander*, 756 S.W.2d at 542; *Marston*, 921 S.W.2d at 103. Further, the Court found that the partition against the ladder was dangerous because its existence "posed a physical threat to the plaintiff."

In line with this rationale, our colleagues in the Western District found that the existence of explosives in unmarked trailers posed a threat to plaintiffs and created a dangerous condition. *Kilventon v. United Mo. Bank*, 865 S.W.2d 741, 746 (Mo.App. 1993). *See also Marston*, 921 S.W.2d at 103 (citing *Wilkes v. Mo. Highway and Transp. Com*, 762 S.W.2d 27 (Mo. banc 1988); *Donahue v. City of St. Louis*, 758 S.W.2d 50 (Mo. banc 1988); *Brown v. Mo. Highway and Transp. Com*, 805 S.W.2d 274 (Mo.App. 1991)).

However, in *State ex rel. St. Louis State Hosp. v. Dowd*, we found that the existence of the paper shredder "by itself was not a threat to" plaintiff until a third party activated it. 908 S.W.2d 738, 740[5] (Mo.App. E.D. 1995). In *Johnson v. City of Springfield*, the court ruled that "we do not believe the alleged conditions of [the road], standing alone, posed a physical threat to the injured plaintiff." 817 S.W.2d 611, 615 (Mo.App. S.D. 1991) (allegations were related to the density of vehicles to pedestrians, parked cars blocking motorists' view of children, and the lack of warning that children were playing in the area).

Utilizing the foregoing principle, the undisputed facts, the placement of a non-defective four inch wide—twelve inch high balance beam, did not pose a physical threat to daughter. Thus, it did not constitute a dangerous condition. Therefore, the dangerous condition exception to sovereign immunity has not been established and summary judgment was properly granted. Because of our disposition, we need not address mother's other contention.

Judgment affirmed.

RHODES RUSSELL, P.J, and KAROHL, J., concur.